1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**O**

# United States District Court
# Central District of California

W. PAUL SIMMONS,

               Plaintiff,

     v.

DON HANKEY; HANKEY GROUP; HANKEY INVESTMENT COMPANY, LP; WESTLAKE SERVICES, LLC; and DOES 1–50, inclusive,

               Defendants.

Case No. 2:16-cv-06125-ODW(JEMx)

**ORDER GRANTING DEFENDANTS' PETITION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [12]**

## I.    INTRODUCTION

This action arises from an employment dispute between Plaintiff W. Paul Simmons and Defendants Don Hankey, Hankey Group, Hankey Investment Company, LP, and Westlake Services, LLC.   Currently before the Court is Defendants' Petition to Compel Arbitration and Stay Proceedings.  (ECF No. 12.)  For the reasons discussed below, the Court **GRANTS** Defendants' Petition.[1]

---

[1] The Court concludes that the Petition does not raise any genuine factual disputes that would require an evidentiary hearing or trial under 9 U.S.C. § 4.  *See Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15 (1st Cir. 2006).  Moreover, the Court deems the legal issues raised therein appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  The Court therefore **VACATES** the hearing on Defendants' Petition.

## II.    BACKGROUND

Hankey Group is an unincorporated association of business entities, including Hankey Investment Company and Westlake Services.  (Compl. ¶¶ 3–6, ECF No. 1; *see* Douglas Suppl. Decl. ¶ 5, ECF No. 27-1.)  Between June 2014 and October 2015, Simmons was employed as the President of Hankey Group.[2]  (Douglas Suppl. Decl. ¶¶ 5–6; Compl. ¶ 42.)    Approximately one month before Simmons began his employment, Tonia Douglas, who was Hankey Investment Company's Director of Human Resources, e-mailed Simmons a "New Hire Package" that contained a standalone arbitration agreement.  (Douglas Suppl. Decl. ¶ 3.)  On May 7, 2014, Simmons returned to Douglas an executed copy of the agreement.  (*Id.*)  The next day, Douglas executed the agreement on behalf of Hankey Investment Company, and placed the fully executed agreement in Simmons' employment file.  (*Id.* ¶ 4.)  The arbitration agreement reads in pertinent part as follows:

> **1.    AGREEMENT TO ARBITRATE**
>
> Except as otherwise provided in this Agreement, the Company and the Employee hereby consent to the resolution by arbitration of all claims or controversies, for which a court otherwise would be authorized by law to grant relief, in any way arising out of, relating to, or associated with the Employee's employment with the Company, or its termination (hereinafter "Claims"), that the Company may have against the Employee or that the Employee may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise.
>
> . . .
>
> **6.    CONSTRUCTION AND ENFORCEABILITY**
>
> Any issue or dispute concerning the formation, applicability,

---

[2] There is some disagreement regarding Simmons' title and the Hankey entity that employed him.  Simmons alleges that he was initially hired as the Hankey Group's Chief Investment Officer and was promoted to President and Chief Operating Officer a month later.  (Compl. ¶ 42.) Hankey's Director of Human Resources submits a declaration stating that Simmons' title was always President of Hankey Group, although he received his paychecks from Hankey Investment Company.  (Douglas Suppl. Decl. ¶¶ 5–6.)  The Court does not find these distinctions relevant for the purposes of this Petition.

interpretation or enforceability of this Agreement, including any claim or contention that all or any part of this Agreement is void or voidable, shall be subject to arbitration as provided herein. The arbitrator, and not any federal, state or local court or agency, shall have authority to decide any such issue or dispute.

(Douglas Decl. ¶ 3, Ex. A ("Agreement") ¶¶ 1, 6, ECF No. 12-2.)

In October 2015, Defendants terminated Simmons' employment. (Compl. ¶¶ 98, 99.) In November 2015, Defendants sent Simmons his personnel file, which contained a copy of the arbitration agreement signed only by Simmons (and not Hankey Investment Company). (Patten Decl. ¶ 2, ECF No. 25-1.) In August 2016, Simmons filed this action, wherein he asserts the following claims: (1) retaliation in violation of the Consumer Financial Protection Act (CFPA); (2) wrongful termination in violation of public policy; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of Labor Code sections 970 and 972; (6) violation of Labor Code section 203; (7) violation of Labor Code section 221; (8) whistleblower retaliation; (9) unfair business practices; (10) false light; (11) promissory fraud; and (12) fraud by intentional misrepresentation. (ECF No. 1.) Approximately one month later, Defendants petitioned to compel arbitration and to stay the proceedings pending the outcome of arbitration. (ECF No. 12.) Simmons timely opposed, and Defendants timely replied. (ECF Nos. 25, 27.) Defendants' Petition is now before the Court for consideration.

### III.   LEGAL STANDARD

The Federal Arbitration Act provides as follows[3]:

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract [or]

---

[3] Simmons does not dispute that the arbitration agreement concerns "a transaction involving commerce" and thus that the FAA applies. *See generally Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265 (1995).

transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

While it is usually the court's task to "determine whether the parties agreed to arbitrate the dispute," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), the court "will be divested of that authority if the parties 'clearly and unmistakably provide' that an arbitrator is to decide whether a dispute is subject to arbitration." *New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). "[S]ilence or ambiguity" in the agreement concerning who should decide arbitrability is construed against arbitrating that question. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944.

## IV.   DISCUSSION

Defendants contend that Simmons agreed to arbitrate the substantive claims raised in this lawsuit.  (Mot. at 11–18, ECF No. 12.)  Moreover, to the extent Simmons disputes that his claims are subject to arbitration, Defendants contend that Simmons agreed to arbitrate *that* dispute as well.  (*Id.*)  Defendants also argue that the agreement to arbitrate arbitrability applies to both the signatory Defendant Hankey Investment Company and the three nonsignatory Defendants in this action, because the latter acted as agents of the former.  (*Id.* at 14–16.)  The Court agrees that Simmons must arbitrate the question of arbitrability with both the signatory and nonsignatory Defendants.

/ / /

/ / /

4

**A.     Signatory Defendant**

      **1.     Formation**

      In California, a valid contract requires: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).  Here, there is no dispute that the parties were "capable of contracting" or that an agreement to arbitrate is a "lawful object."  Simmons argues, however, that Hankey Investment Company did not validly assent to the contract, and that there was no consideration. (Opp'n at 6–9.)

      **i.     Consent**

      Simmons argues that the absence of Hankey Investment Company's signature from the agreement sent to Simmons in November 2015 shows that it never signed the agreement before or during Simmons' employment.  (*Id.*)  Thus, Simmons continues, Hankey Investment Company did not validly assent to the agreement.  (*Id.*) Defendants respond that their sending Simmons only a partially executed agreement was inadvertent, and that Hankey Investment Company signed the agreement the day after Simmons signed it back in May 2014.  (Douglas Suppl. Decl. ¶¶ 3, 4, 7.) Defendants attach a copy of the fully executed agreement to their moving papers. (Douglas Decl. ¶ 3, Ex. A.)

      Simmons' argument fails for two reasons.  First, the fact that Defendants sent Simmons only a partially executed copy of the agreement in 2015 does not show that Defendants failed to sign the agreement in 2014.  Defendants' representative declares that she signed the agreement in May 2014, and explains that her failure to send Simmons the fully executed version was an oversight.  (Douglas Suppl. Decl. ¶¶ 3, 4.) And, for what it is worth, the agreement produced by Defendants contains the representative's signature and is dated May 8, 2014.  (Douglas Decl. ¶ 3, Ex. A.) Simmons' weak circumstantial evidence is thus insufficient to create a genuine dispute that Defendants did not sign the agreement in May 2014.

Second, Defendants can in any event assent to the agreement without physically signing it. "Contract formation requires mutual consent." *Pac. Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 309 (2014) (citations and internal quotation marks omitted). "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270–71 (2001); Cal. Civ. Code § 1565 ("The consent of the parties to a contract must be . . . [m]utual[] and [c]ommunicated by each to the other."). "The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances. The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer." *Donovan*, 26 Cal. 4th at 271. Here, Simmons would have reasonably construed Defendants e-mailing him the arbitration agreement to constitute an offer, which he accepted by executing and returning the agreement. The fact that Defendants did not pre-sign the agreement before sending it to Simmons does not change this. The agreement is obviously a form agreement that Defendants likely sent to all new hires, and thus any reasonable employee would understand that the agreement contained the final terms on which Defendants would agree to be bound. As a result, a reasonable employee would understand that signing and returning the agreement without any changes created a binding contract. In other words, Defendants manifested their assent to the agreement by sending a complete and final version of it to Simmons for his signature, not by secretly signing the agreement after receiving it back from Simmons. Defendants' signature is just icing on the cake.[4]

---

[4] Simmons cites *Banner Entertainment, Inc. v. Superior Court*, which held that "[w]hen it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created." 62 Cal. App. 4th 348, 358 (1998). The

### ii.   Consideration

Simmons' argument that the agreement lacks consideration is derivative of his argument that there was no mutual assent.  That is, Simmons argues that Defendants have no obligations under the agreement because they did not execute the agreement, and thus there is no consideration for Simmons' obligations thereunder.  (Opp'n at 8–9.)  Because the Court concludes that Defendants did indeed assent to the agreement, Simmons' argument fails.   As long as the agreement to arbitrate arbitrability is mutual, there is sufficient consideration.  *See, e.g.*, *Circuit City Stores, Inc. v. Najd*, 294 F. 3d 1104, 1108 (9th Cir. 2002) (a promise to be bound by the arbitration process itself serves as an adequate consideration); *Strotz v. Dean Witter Reynolds*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other.").

### 2.   Contract Language

The Court also concludes that the agreement "clearly and unmistakably" provides for arbitrating arbitrability.  *New England Mech.*, 909 F.2d at 1345.  The agreement subjects to arbitration (1) "all claims or controversies . . . in any way arising out of, relating to, or associated with [Simmons'] employment with the Company, or its termination . . . that [Simmons] may have against the Company," and (2) "[a]ny issue or dispute concerning the formation, applicability, interpretation or enforceability of this Agreement, including any claim or contention that all or any part of this Agreement is void or voidable."  (Douglas Decl. ¶ 3, Ex. A.)  Thus, there is no doubt that the disputes to be arbitrated include whether Simmons' claims should be subject to arbitration.

Simmons argues that the agreement applies only to "employees," which does

---

Court does not find *Banner* analogous.  The agreement here does not specifically state that it would be operative *only* if signed, and thus Defendants could assent to the agreement in other ways.

not include the President.  (Opp'n at 9.)  The Court disagrees.  The agreement clearly applies to whoever signs it, which in this case is Simmons.  *See Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993) ("language in a contract must be construed in the context of that instrument as a whole," not in the abstract).  The agreement then simply defines that person as an "Employee"; it does not purport to limit the obligations in the contract only to those persons who are "employees" in the dictionary sense of the word.[5]  *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004) ("When interpreting a policy provision, we give its words their ordinary and popular sense except where they are used by the parties in a technical or other special sense.").  Indeed, Simmons' interpretation would produce the absurd result that he is a party to an agreement but has no obligation whatsoever under that agreement.  Suffice it to say, the Court rejects Simmons' interpretation.

**B.     Nonsignatory Defendants**

Defendants next argue that nonsignatory Defendants Don Hankey, Hankey Group, and Westlake Services can compel arbitration against Simmons because they were acting as agents of the signatory Defendant Hankey Investment Company.  (Mot. at 14–16.)[6]  Simmons argues that the agreement does not evidence an intent for nonsignatory entities to be bound by, or to benefit from, the arbitration agreement.  (Opp'n at 10.)  The Court agrees with Defendants.

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).  Generally,

---

[5] That is also assuming that the dictionary definition of "employee" does in fact exclude the President, which the Court is not necessarily convinced that it does.

[6] Defendants also appear to argue that the nonsignatories are third-party beneficiaries of the arbitration agreement, although they do not couch their argument in those terms.  (Mot. at 16; Reply at 7, ECF No. 27.)  Because the Court agrees with Defendants' agency theory, the Court need not address this separate theory.

1   nonsignatories can enforce contracts under the following theories: "1) incorporation
2   by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel."
3   *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citations and internal
4   quotation marks omitted).   Under an agency theory, "'[a] nonsignatory to an
5   agreement to arbitrate . . . may invoke arbitration against a party[] if a preexisting
6   confidential relationship, such as an agency relationship between the nonsignatory and
7   one of the parties to the arbitration agreement, makes it equitable to impose the duty to
8   arbitrate upon the nonsignatory.'"   *Murphy*, 724 F.3d at 1232 (quoting *Westra v.*
9   *Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759 (2005)).
10  In determining whether a nonsignatory is an agent of a signatory, the court may
11  consider allegations of agency in the complaint.   *Dryer v. Los Angeles Rams*, 40 Cal.
12  3d 406, 418 (1985) ("If, as the complaint alleges, the individual defendants, though
13  not signatories, were acting as agents for the [signatory], then they are entitled to the
14  benefit of the arbitration provisions."); *RN Sol., Inc. v. Catholic Healthcare W.*, 165
15  Cal. App. 4th 1511, 1520 (2008) ("The complaint alleges that he was a managing
16  agent and vice-president of human resources within the company.   As such, he is also
17  bound by the arbitration agreement and entitled to enforce it."); *24 Hour Fitness, Inc.*
18  *v. Superior Court*, 66 Cal. App. 4th 1199, 1210 (1998).

19       The Court concludes that each nonsignatory Defendant was an agent of the
20  signatory Defendant Hankey Investment Company.   Simmons alleges in the
21  Complaint that Don Hankey is an "Agent and Owner of the constituent entities of the
22  Hankey Group," and one of the "constituent entities of the Hankey Group" includes
23  Hankey Investment Company.   (Compl. ¶¶ 3, 11.)   Simmons also alleges more
24  generally that "[a]t all times herein mentioned each of the Defendants was the agent
25  . . . of each of the remaining defendant, and in doing the things hereinafter alleged,
26  was acting within the scope of such agency."   (*Id.* ¶ 14.)   Therefore, the Hankey
27  Group and Westlake Services are also agents of Hankey Investment Company.

28       Simmons does not respond to Defendants' arguments regarding agency.

9

1   Instead, Simmons points to a separate confidentiality and non-compete agreement
2   between him and Defendants that explicitly references "Hankey Investment Company
3   . . . and its affiliated companies," and argues that because the arbitration agreement
4   does not similarly use the words "affiliated companies," Defendants must have
5   intended to exclude any such "affiliated companies" from the arbitration agreement.
6   (Opp'n at 10; Patten Decl. ¶ 3, Ex. B.)   However, the Court does not find this
7   inference plausible unless the same person drafted both agreements at the same time
8   (or that Simmons reasonably believed that to be the case).   Not only does Simmons
9   not provide any such evidence, but even a cursory review of the two agreements
10  shows that the arbitration agreement was drafted specifically for use by Defendants,
11  whereas the non-compete agreement is not company-specific.

12  Next, the Court concludes that the language of the arbitration agreement clearly
13  and unmistakably provides that Simmons must arbitrate arbitrability with the
14  nonsignatory Defendants.  *See Kramer*, 705 F.3d at 1126–28.  Simmons agreed to
15  arbitrate "all . . . controversies" between himself and Hankey Investment Company's
16  "officers, directors, employees or agents" that "in any way ar[ose] out of, [was]
17  relat[ed] to, or [was] associated with the Employee's employment with the Company,
18  or its termination."  The agreement also expressly provides that "*any* issue or dispute"
19  concerning arbitrability must be decided by the arbitrator, and that the courts do not
20  have authority to decide "any" such dispute.   The repeated and unambiguous
21  references to arbitrating any and all disputes and controversies, including specifically
22  any and all disputes concerning arbitrability, thus must include disputes with the
23  nonsignatory Defendants, who are agents of the signatory Defendant.

24  **C.    Whether the Assertion of Arbitrability is "Wholly Groundless"**

25  Simmons makes two arguments regarding the validity and scope of the
26  arbitration agreement as it pertains to his substantive claims: (1) that the agreement is
27  unconscionable; and (2) that CFPA claims are not subject to arbitration.  (Opp'n at
28  10–16.)

10

Because the parties agreed to arbitrate such questions, the Court obviously cannot make a final decision on those issues. That said, the Fifth Circuit, Sixth Circuit, and Federal Circuit have held that once the court determines that the parties delegated the question of arbitrability to the arbitrator, the court should also conduct "a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006); *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014); *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 507 (6th Cir. 2011). The Tenth Circuit, on the other hand, recently concluded that the parties must arbitrate arbitrability regardless of how meritless the arbitrability questions may initially appear to the district court. *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017). The Ninth Circuit does not appear to have addressed the issue, although several district courts within the Ninth Circuit have adopted the "wholly groundless" test. *See, e.g.*, *Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-CV-01503-WHO, 2015 WL 4692418, at *4 (N.D. Cal. Aug. 6, 2015); *Baysand Inc. v. Toshiba Corp.*, No. 15-CV-02425-BLF, 2015 WL 7293651, at *3 (N.D. Cal. Nov. 19, 2015). For the reasons discussed in *Belnap*, the Court concludes that the Tenth Circuit's approach is in more in line with the text of the FAA and Supreme Court precedent, and therefore declines to address Simmons' arguments.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.    CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Defendants' Petition to Compel Arbitration.  (ECF No. 12.)  The Court **STAYS** the case pending completion of the arbitration.  9 U.S.C. § 3; *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 841 (N.D. Cal. 2007).

**IT IS SO ORDERED.**

January 30, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**